**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JACK JEFFREY,** *Plaintiff,* | § | |
| ***v.*** | § | **CASE NO. 6:21-CV-1233-ADA-DTG** |
| **CUSTOM TRUCK ONE SOURCE, INC. AND FRED ROSS,** *Defendant,* | § | |

**REPORT AND RECOMMENDATION TO DENY**
**DEFENDANTS' MOTION TO DISMISS (DKT. NO. 14)**

**TO: THE HONORABLE ALAN D ALBRIGHT,**
**UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, and the Order referring this case to the undersigned (Dkt. No. 20).

Before the Court is the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Dkt. No. 14. That motion has been fully briefed and on July 9, 2025, the undersigned heard arguments of counsel. Dkt. Nos. 17, 19, & 22. At that hearing, the undersigned gave the parties an opportunity to submit additional authority and neither party submitted any such authority. For the following reasons, the undersigned **RECOMMENDS** that the defendants' motion be **DENIED**.

This case was also previously stayed at the parties' request pending mediation. Dkt. No. 6. That mediation was unsuccessful, though the stay was never formally lifted. *See* Dkt. No. 8 (the mediator's notice). As the stay automatically expired sixty (60) days after the stay order was

entered (Dkt. No. 6) but was never formally lifted on the docket, it is also the undersigned's **RECOMMENDATION** that the stay be lifted and the parties **ORDERED** to submit a motion for a scheduling order **on or before September 15, 2026**.

## I. BACKGROUND

This case arises from the plaintiff's decision to accept employment with the defendant, Custom Truck One Source, Inc. based on urging and promises by its CEO, Defendant Fred Ross ("Defendant Ross"). The plaintiff, Jack Jeffrey, was an employee at Waco's Time Manufacturing Company ("Time") for 19 years, ultimately becoming a Vice-President and acquiring shares and interests worth over $350,000. Dkt. No. 11 ¶¶ 11, 19. Time and Defendant Custom Truck One Source ("Defendant Custom") were direct competitors and sometimes customers. While working at Time, the plaintiff met Defendant Ross, who in 2015 began asking the plaintiff to leave Time and join his company, which was then operated as Utility One Source, LP. *Id*. ¶¶ 2, 14. The plaintiff alleges that Defendant Ross came to Waco and repeatedly called the plaintiff in Waco over several years. *Id.* ¶¶ 14–16. Knowing of the plaintiff's financial interests in Time, Defendant Ross allegedly offered the plaintiff compensation that would far exceed what he was giving up. *Id*. ¶¶ 21–22. Based on the defendant's assurances, the plaintiff left his job at Time and went to work for the defendant. *Id.* ¶ 25.

According to the plaintiff, the defendants failed to live up to the promises made by Defendant Ross. The plaintiff never received the promised financial benefits. *See id.* ¶ 32. Based on Defendant Ross's assurance of financial benefits to come, the plaintiff continued to work for the defendants. *Id.* ¶¶ 29–32. After a few years, Defendant Custom was acquired by a third party and the plaintiff's employment was terminated without receiving the promised compensation. *Id.*

¶ 32. The plaintiff filed this lawsuit shortly after and asserted claims for breach of contract, promissory estoppel, and fraud. ¶¶ 35–38.

In response to the plaintiff's First Amended Complaint, the defendants filed the present motion and asserted several reasons to dismiss or transfer the case. Dkt. No. 14. First, the motion seeks dismissal under Rule 12(b)(2) because the Court allegedly lacks personal jurisdiction over Defendant Ross. *Id*. at 2. Next, the defendants seek dismissal under Rule 12(b)(6) because the plaintiff allegedly failed to sufficiently plead claims for breach of contract, promissory estoppel, or fraud. *Id*. at 5. Finally, the motion seeks dismissal under the doctrine of *forum non conveniens* and Rule 12(b)(6) because the case allegedly belongs in arbitration. *Id*. at 12.

**A. This Court has Personal Jurisdiction Over Defendant Fred Ross**

Defendant Ross contends that the First Amended Complaint fails to demonstrate that he had sufficient contacts with Texas for general or specific personal jurisdiction to exist. *Id*. at 3. He points to the allegations that he is a Missouri resident, "has no plans to become a Texas resident," and does not maintain an office in Texas. *Id*. (citing Dkt. No. 11 ¶¶ 3, 4, 6, 9, 10, & 11); Dkt. No. 14-1 ¶¶ 3–4. He contends that Defendant Custom's contacts cannot be used to establish general jurisdiction over him. *Id*. at 3-4. He further contends that none of the conduct in the First Amended Complaint can demonstrate specific jurisdiction because he was not a party to the plaintiff's employment offer, he did not aim any alleged representations at Texas, and he did not make any alleged misrepresentations while in Texas. *Id*. at 4–5.

The plaintiff responds that Defendant Ross has minimum contacts because of his contacts that relate directly to this case. Dkt. No. 17. The plaintiff contends that Defendant Ross came to Texas to directly and repeatedly recruit the plaintiff, a Texas resident, for employment. *Id.* at 1–2. The plaintiff alleges that all this conduct was done by Defendant Ross in his role as chief

executive officer of Defendant Custom. *Id*. at 1 (citing Dkt. No 11 ¶ 13). The plaintiff further points to further efforts by Defendant Ross directed at the plaintiff when two individuals called the plaintiff in Texas at Defendant Ross's request to encourage him to work for and trust Defendant Ross. *Id*. at 2 (citing Dkt. No. 11 ¶ 24), 6–7 (citing Dkt. No. 11 ¶¶ 14, 16, 24, 25). Under these facts and existing case law, the plaintiff contends that due process is satisfied. *Id*. at 8–9 (arguing that *Cypers v. PHI-BCC, LLC*, No. 4:21-CV-00382, 2022 U.S. Dist. LEXIS 3759 (E.D. Tex. Jan. 7, 2022) is particularly analogous).

Defendant Ross responds by arguing that the plaintiff failed to connect the specific contacts to the specific causes of action. Dkt. No. 19. He contends that the plaintiff failed to allege that Defendant Ross is a party to any contract or employment offer, and that "[t]he fiduciary-shield doctrine thus prohibits the Court from exercising jurisdiction over Ross for Custom's alleged breach of contract." *Id*. at 2–3. Finally, Defendant Ross contends that the plaintiff failed to connect the representations underlying the fraud or promissory estoppel claims to Texas. *Id*. at 3.

The undersigned is persuaded that specific jurisdiction exists because this case arises from Ross's contacts that were directed at a Texas resident. The First Amended Complaint alleges that while the plaintiff was working in Texas for Time Manufacturing Company, Defendant Ross repeatedly pursued the plaintiff on the phone and in person while the plaintiff was in Texas. Dkt. No. 11 ¶¶ 16-24. When deciding this issue, the plaintiff needs to present only a prima facie case that personal jurisdiction is proper, and any disputed facts are resolved in the plaintiff's favor. *Jones v. Petty-Ray Geophsycial Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992) (also noting that a preponderance of the evidence is not required). The undersigned finds the *Cypers* case to be most relevant for this conclusion. *Cypers v. PHI-BCC, LLC*, Civil Action

No. 4:21-CV-00382, 2022 WL 79837, 2022 U.S. Dist. LEXIS 3759 (E.D. Tex. Jan. 7, 2022). As noted in *Cypers*, the Texas Long Arm Statute extends jurisdiction to the limits of due process. *Id*. at *2 (citing *Command-Aire Corp. v. Ont. Mech. Salse and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992)). Here, Defendant Ross reached out to a resident of this state and created a continuing relationship with the plaintiff that gave rise to this lawsuit and that makes the exercise of jurisdiction over the defendant fair and reasonable. Personal jurisdiction exists despite Defendant Ross's claim that all his conduct was done as a corporate officer because the plaintiff has sufficiently alleged fraudulent or tortious conduct. *Id*. at *4 (noting that the fiduciary shield doctrine does not protect persons who perpetrate fraud or tortious conduct or for whom the corporation is an alter ego). As the plaintiff's claims arise directly out of Defendant Ross's contacts and after resolving all disputes in the plaintiff's favor, the undersigned is persuaded that the plaintiff has demonstrated a prima facie case of personal jurisdiction over Defendant Ross. The undersigned, therefore, **RECOMMENDS** that Defendant Ross's motion to dismiss for lack of personal jurisdiction be **DENIED**.

**B. Plaintiff Has Sufficiently Plead a Breach of Contract Claim.**

The defendants also attack the plaintiff's claim for allegedly failing to state a claim for breach of contract for several reasons. The defendants contend that the plaintiff's breach of contract claim fails because Defendant Ross is not a party to the alleged employment offer. Dkt. No. 14 at 6. They also contend that the alleged contract was merely "an agreement to agree" with too many unresolved issues. *Id*. (citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016); *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). They allege that because the employment was at-will, any contract was illusory and unenforceable. *Id*. at 7 (citing *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 400–01 (Tex. 2014)).

Finally, they contend that the plaintiff failed to allege how the contract was breached, which is an essential element of a breach of contract claim. *Id*. at 7–8.

The plaintiff disputes each point and contends that it has sufficiently alleged a breach of contract claim. The plaintiff contends that he has sufficiently alleged breach of contract claims against both defendants. Dkt. No. 17 at 13. He contends that the defendants' at-will arguments are misplaced because his breach of contract claim is based on "promised-compensation [that] was conditioned on *accepting* employment, not *continued* employment." *Id*. at 13 (incorporating Section III.B.3 by reference), 18 (Section III.B.3, emphasis in original). The plaintiff also points to the detailed allegations about what the alleged contract was before and after he accepted employment. *Id*. at 14.

Considering the standard applicable at the pleading stage, the undersigned is persuaded that the plaintiff has sufficiently alleged a breach of contract claim. At this stage, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court must also determine whether the complaint states a plausible claim for relief "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff has provided sufficient detail about the alleged offers—by the defendants, Ross and Custom—and acceptance by the plaintiff. Dkt. No. 11 ¶¶ 21 (promised compensation "in the million dollar range"), 22 (compensation "equal to 'double the estimated value of the shares he had with Time Manufacturing.'"), 25 (the plaintiff accepted the offer with Custom), 26–27 (the accepted offer included assurance of future Class B shares), 29 (after accepting employment with Defendant Custom, Defendant Ross assured the plaintiff that he would receive the money and

that Defendant Ross was working on it), 31 (Defendant Ross assured the plaintiff that if Defendant Custom was sold, the plaintiff would receive approximately $1,000,000). These allegations sufficiently allege the existence of agreements with the defendants, the plaintiff's performance under those agreements, the breaches of those agreements by the defendants, and the plaintiff's damages as required to state a breach of contract claim. *See Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (listing the elements for breach of contract under Texas law).

Contrary to the defendants' assertion in their reply, the complaint has alleged a contract between the plaintiff and each defendant, Custom and Ross. *See* Dkt. No. 19 at 4 (contending that the plaintiff is allegedly attempting to amend his complaint through briefing). The First Amended Complaint alleges the existence of "valid and enforceable *agreements* with *Defendants*." Dkt. No. 11 ¶ 35 (using the plural). Viewing the complaint and the factual allegations in the plaintiff's favor, the plaintiff has sufficiently plead a breach of contract claim against each defendant. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (holding that a complaint is sufficient under Rule 12(b)(6) when it allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted). The plaintiff has sufficiently alleged that Defendant Ross breached his promise to provide compensation above what the plaintiff gave up by leaving Time Manufacturing and that Defendant Custom failed to provide the plaintiff with the promised Class B shares. Dkt. No. 11 ¶¶ 26, 29.

The defendants' cited cases demonstrate that its motion is improper at the pleading stage. The defendants cited *Fischer v. CTMI, L.L.C.* and *T.O. Stanley Boot Co., Inc. v. Bank of El Paso* in support of their claim that the alleged contracts were simply agreements to agree. Dkt. No. 14

at 6 (citing *Fischer v. CTMI, L.L.C.,* 479 S.W.3d 231, 237 (Tex. 2016); *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). Both of those cases addressed the question of whether a contract was simply an agreement to agree, but they did so on a full record after jury verdicts—well beyond the pleading stage. The defendants also contend that under *Sawyer*, the plaintiff's alleged at-will employment makes any contract illusory and unenforceable. *Id*. at 7 (citing *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 400–01 (Tex. 2014)). *Sawyer* was decided on a certified question from the Fifth Circuit Court of Appeals following a summary judgment motion. *Sawyer*, 430 S.W.3d at 397–98. *Sawyer* also expressly held that at-will employment does not prevent formation of a contract on terms unrelated to continued employment. *Id.* All of these cases demonstrate that the defendants' complaints are more akin to defenses that should be addressed on a full record, not at the pleading stage. Based on this, the undersigned **RECOMMENDS** that the motion to dismiss the breach of contract claims be **DENIED**.

**C. Plaintiff Sufficiently Alleges a Promissory Estoppel Claim.**

Next, the defendants challenged the plaintiff's allegations of promissory estoppel. Dkt. No. 14 at 8. They contend that the alleged promises by Defendant Ross are not sufficiently definite to support a promissory estoppel claim. *Id*. at 8-9 (citing *Simulis, L.L.C. v. Gen. Elec. Cap. Corp.*, 2008 WL 174748 at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no pet.);*Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567–70 (Tex. App.—Dallas 1989, no writ)). They also contend that the plaintiff's at will employment and the lack of specifics in the offer letter prevent the plaintiffs' reliance from being reasonable and from adequately stating a claim. *Id*. at 9 (citing *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Stacey v. Lange*, No. H-21-2340, 2022 WL 103554, Slip op. at *4

(S.D. Tex. Jan. 11, 2022)). At most, the defendants contend, the complaint alleges statements of opinions, which are not sufficient for a promissory estoppel claim. Dkt. No. 19 at 6.

The plaintiff responds that the promise of greater compensation was alleged with specificity multiple times and that his reliance was justified. The plaintiff points to allegations that he repeatedly told Defendant Ross that the plaintiff would not leave his employment with Time because of the equity interest he would lose. Dkt. No. 17 at 15 (citing Dkt. No. 11 ¶ 19). The plaintiff points to alleged facts that support the amount and specificity of the offer and the reasonableness of the plaintiff's reliance. *Id*. (citing Dkt. No. 11 ¶¶ 21–24, 27, 28, & 31). The plaintiff also points out that reasonableness is typically a fact question and that cases with lesser facts have survived summary judgment. *Id*. at 14 n.84 & 16 n.93 (citing *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 583–84 (Tex. App.—San Antonio 2011, no pet.), *overruled on other grounds by Nath v. Tex. Children's Hosp*., 576 S.W.3d 707 (Tex.2019); *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs*., 900 F.3d 640, 649 (5th Cir. 2018); *Lascano v. Huser Constr. Co.,* No. 04-14-00311-CV, 2015 Tex. App. LEXIS 5289, at *18–19 (Tex. App.—San Antonio May 27, 2015, no pet.)). The plaintiff also incorporates the at-will argument discussed above. *Id*. at 16 (incorporating Section III.B.3 by reference), 18 (Section III.B.3, emphasis in original).

The undersigned is again persuaded that the plaintiff has sufficiently plead a claim for promissory estoppel. Again, the defendants' reliance on *Sawyer* is misplaced as that decision arose from a summary judgment motion—not one under Rule 12(b)(6)—and it specifically recognized that a plaintiff could still recover damages incurred because of reliance on a fraudulent promise. *Sawyer*, 430 S.W.3d at 400–01. As noted by the plaintiff, the promissory estoppel claim is not based on a promise of continued employment but is based on the plaintiff's acceptance of employment and relinquishment of his equity interest in his prior employer. Dkt.

No. 17 at 18. Unlike the *Comiskey* case cited by the defendants, this case is not at the trial stage and the plaintiff has plead sufficient evidence of the assurances by the defendants, two other individuals encouraging the plaintiff to reasonably rely on Defendant Ross, promise of Class B shares in the offer letter, and the defendants' executive vice president's confirmation that Defendant Ross often made agreements like this. *See Comiskey*, 373 S.W.3d at 636–37 (noting the plaintiff was a sophisticated businessman who unreasonably signed agreements without reading them); *see also Stacey v. Lange*, No. H-21-2340, 2022 WL 103554, Slip op. at *4 (S.D. Tex. Jan. 11, 2022) (holding that allegations of a previously promised higher hourly wage could not support a promissory estoppel claim when the plaintiff accepted at-will employment at a lower hourly wage). Considering all these alleged facts, the undersigned is persuaded that the plaintiff has sufficiently plead a promissory estoppel claim and **RECOMMENDS** that the defendants' motion directed at that claim be **DENIED**.

**D. Plaintiff Sufficiently Alleged a Claim for Fraud.**

Next, the defendants contend the plaintiff failed to plead fraud with the particularity required of Rule 9(b). Dkt. No. 14 at 10. They note that the Fifth Circuit Court of Appeals has held that Rule 9(b) requires a plaintiff to "identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent" as well as "set fort *specific facts* supporting an inference of fraud." *Id*. (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008)). They argue that the plaintiff only includes boiler plate language about intent and they contend that it is similar to language courts routinely find insufficient to satisfy Rule 9(b). *Id*. at 11 (citing Dkt. No. 11 ¶ 33). They also criticize the complaint for failing to adequately identify the alleged fraudster, failing to identify the location of the representations, and failing to allege reasonable reliance. *Id*. at 11–12.

The plaintiff responds by contending that the complaint includes all the necessary specifics. It provides that the "who" is Defendant Ross. The "what" is Defendant Ross's repeated representations that he would more than make up the plaintiff's loss of his interest in Time. The "where" being the multiple in-person and telephonic statements by Defendant Ross to the plaintiff. The "why" being to induce the plaintiff to leave his employer, give up his equity interest, and continue working for Defendant Custom. And the "when" is shown by the multiple statements identified in the complaint. Dkt. 17 at 16. The plaintiff also contends that the defendants are overstating the requirements of Rule 9(b). *Id*. nn.96-98 (citing *IAS Servs. Grp., L.L.C.*, 900 F.3d at 647 (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)); *Centeno v. Facilities Consulting Group, Inc.*, No. 3:14-CV-3696-G, 2015 U.S. Dist. LEXIS 41352, at *8 (N.D. Tex. Mar. 31, 2015)).

The undersigned is also persuaded that the plaintiff has sufficiently pleaded a claim for fraud. While the complaint occasionally refers to the defendants globally, it also specifies the alleged fraudulent statements and the maker of those statements. Dkt. No. 11 ¶¶ 14 ("In 2015, Ross began asking Plaintiff to leave Time and join what was then Utility."), 16 (while touring "the Time Manufacturing plant because he wanted to purchase it. . . . Ross came to Plaintiff's Waco office and again told Plaintiff 'I want you working for me.'"), 21 ("Ross represented to Plaintiff that if he would leave Time and would come to work for Defendants, Plaintiff would be provided an overall compensation package, which would be far in excess of what he was foregoing by leaving Time and would be in the million dollar range once and if Custom ever sold."), 29 (when asked about shares and compensation "Ross would tell Plaintiff that he was 'working on it.'"). There are several other places in the complaint where the plaintiff specifically identifies alleged fraudulent statements made by Defendant Ross or by people acting on his

behalf. Those statements adequately identify the who, what, when, where, and why required under Rule 9(b).

The plaintiff has sufficiently identified specific facts that support an inference of fraud. As noted in *Dorsey*—a case relied on by the defendants—"the second sentence of Rule 9(b) relaxes the particularity requirement for conditions of the mind, such as scienter: 'Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.'" *Dorsey*, 540 F.3d at 339. Such facts include Defendant Ross's desire to buy the plaintiff's prior employer, Defendant Ross's repeated assurances that the plaintiff could trust him, and that in light of rumors that Defendant Custom was going to be purchased by another company, Defendant Ross made additional specific statements to encourage the plaintiff's continued work for Defendant Custom. Dkt. No. 11 ¶¶ 16, 27, 29, 30, 31. The undersigned is persuaded that these and other particular facts in the complaint are sufficient to demonstrate conscious fraudulent conduct by Defendant Ross and create an inference of fraud. *See Dorsey*, 540 F.3d at 339 (holding that alleging facts that show a motive to commit fraud or indicate conscious behavior are sufficient to allege intent). The undersigned, therefore, **RECOMMENDS** that the defendant's motion to dismiss the plaintiff fraud claim be **DENIED**.

**E. The Defendants' Motion for Dismissal Based on Forum Non Conveniens and Arbitration Should be Denied.**

The defendants also move for dismissal under forum non conveniens and Rule 12(b)(6) based on an arbitration agreement that the plaintiff never signed. The defendants attached two exhibits to their motion—an unsigned offer letter (Dkt. No. 14-2 (Ex. B)) and an unsigned share agreement which contains the alleged arbitration agreement (Dkt. No. 14-3 (Ex. C)). Dkt. No. 14 at 12–13. The defendants contend that "Jeffrey and Custom intended to incorporate the Share

Agreement into the employment offer"—though they cite no evidence in support of this statement. *Id*. at 13. The alleged arbitration agreement is contained in a document titled, the Custom Truck One Source, L.P.—Class B Award Agreement. It states that "[a]ny disagreement, dispute or claim arising out of or relating to this Agreement which cannot be settled by the parties hereto shall be settled by arbitration in accordance with the following provisions: (a) the forum for arbitration shall be Delaware;" that the parties "retain the right to seek judicial assistance to (i) compel arbitration;" and "that any such judicial assistance shall be sought solely in a federal or state court in the State of Delaware." Dkt. No. 14-3 ¶ 17. The defendants contend that because of the forum selection clause of the share agreement, they may not move to compel arbitration, but rather, that the case should be dismissed under either forum non conveniens or Rule 12(b)(6). Dkt. No. 14 at 14. They contend that because the plaintiff is attempting to enforce an employment contract, he must abide by the arbitration clause that is part of that agreement. *Id*. at 15. They further contend that the plaintiff's claims fall under the agreement because of the breadth of the arbitration agreement. *Id*. at 16. They contend that the applicable factors favor dismissal and that all the claims are so intertwined as to justify dismissal of the entire case. *Id*. at 17–18 (citing *Weber*, 811 F.3d at 775; Hays v. HCA Holdings, Inc., 838 F.3d 605, 610 (5th Cir. 2016)). Finally, they contend that the case should also be dismissed under Rule 12(b)(6) because the plaintiff waived his right to file this lawsuit in Texas. *Id*. at 19–20.

The plaintiff responds with two primary arguments. First, he contends that the defendants have failed to establish the existence of an arbitration agreement. Dkt. No. 17 at 19–20. They note that the authority for arbitration rests on the consent of the parties, but the arbitration agreement that the defendants contend applies was neither shown to, mentioned to, nor signed by the plaintiff. *Id*. at 21. The plaintiff also points out that the defendants rely on an unsigned offer

letter to connect the plaintiff to the arbitration agreement that he also never saw nor signed. *Id.*; Dkt. No. 11 ¶ 26 (denying that anyone ever conditioned the receipt of Class B shares on agreeing to arbitration and asserting that the plaintiff was never sent a purported arbitration agreement until after this suit was filed). These shortcomings, according to the plaintiff, distinguish this case from *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020). *Id*. at 21–22. The plaintiff also notes that in addition to lacking a signature, the date of the purported arbitration agreement fails to correspond to the plaintiff's employment with the defendants. *Id*. at 22. The plaintiff's second point is that the unsigned arbitration agreement is not applicable to his claims. He notes that the agreement involves Class B shares, which he was never given. Rather, he contends that the promise of the potential shares was an additional fraudulent statement made to encourage his continued employment with the defendants. *Id*. at 23–24. But having never received those shares, he was never subject to the alleged award agreement that accompanied them.

As an initial matter, the Court notes that the defendants introduced additional evidence for the first time in their reply. *See* Dkt. No. 19-1. The defendants' motion relied on two documents—a letter offering employment (Dkt. No. 14-2) and a share agreement (Dkt. No. 14-3). Dkt. No. 14 at 7, 13. The defendants' motion, however, failed to authenticate either document or provide any evidence explaining the documents other than attorney argument. *Id*. When the plaintiff pointed out the obvious deficiencies in that evidence, the defendants attached a declaration to their reply in an apparent attempt to fill some of those gaps. Dkt. No. 19-1. When a movant raises new evidence in a reply brief, however, the district court must either permit the non-movant a sur-reply or decline to consider the newly briefed matters. *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (citing *Residents*

*of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022)). The need to provide evidence proving up and explaining the documents on which the defendants rely was an obvious requirement when the defendants chose to rely on them in support of their motion. The defendants' failure to include the declaration with their motion requires the Court to disregard it. *Id*.

The undersigned is further persuaded that this portion of the defendants' motion should be denied for failing to satisfy the fundamental requirement of proving the existence of an applicable arbitration agreement. As noted by the defendants, the first step in evaluating a request to enforce arbitration is to determine "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). Yet to prove the existence of an arbitration agreement, the defendants rely on an unsigned offer of employment that references the possibility of Class B shares that are allegedly governed by an incomplete and unsigned Class B Award Agreement. *See* Dkt. No. 14 at 13; Dkt. No. 14-2; Dkt. No. 14-3. The defendants made no attempt to authenticate or prove up the unsigned offer letter or the unsigned share agreement until their reply. *Georgia Firefighters'*, 99 F.4th at 774 (noting that courts abuse their discretion by considering evidence presented for the first time in a reply) (citations omitted). While the plaintiff contends that an offer letter was signed, he never contends that it was the one attached to the defendants' motion. Dkt. No. 17 at 21 n.111. The defendants attempt a slight of hand by implying that the plaintiff must have signed the blank letter by contending that he "admits he signed *the* employment offer" when the plaintiff instead contends that he signed *an* employment offer. *Compare* Dkt. No. 19 at 10 (improperly misstating that the plaintiff "admits he signed *the* employment offer"), *with* Dkt. No. 17 at 21 n.111 (stating that only *an* offer letter was signed). Not only does the defendants'

untimely evidence confirm that they do not have a signed copy of the letter, but it also confirms that "Custom Truck does not possess an executed Class B Share Agreement with Jack Jeffrey because Jack Jeffrey never received any Class B shares." Dkt. No. 19-3 ¶ 9. This portion of the defendants' motion asks the Court to bind plaintiff to an arbitration agreement contained in an unsigned share agreement for Class B shares that both parties agree the plaintiff never received. The undersigned is persuaded that having confirmed that the plaintiff never received any shares and neither saw nor signed the Class B Share Agreement, the defendant failed to satisfy its burden of proving that the parties had a valid arbitration agreement. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (stating that the party must prove existence of an agreement by a preponderance of the evidence). The undersigned is persuaded that the defendants' motion seeking dismissal of the plaintiff's claims because of an arbitration provision that the plaintiff never saw and never signed and that would govern shares he never received should be denied. As the defendants failed to satisfy the first step of demonstrating that the case should be dismissed because of an arbitration clause, the undersigned finds it unnecessary to address the remainder of the defendants' arguments concerning arbitration. The undersigned **RECOMMENDS** that the defendants' motion to dismiss for forum non conveniens and under Rule 12(b)(6) be **DENIED**.

## II. CONCLUSION

As discussed above, the undersigned **RECOMMENDS** that the defendants' motion be **DENIED** in its entirety. Based on Defendant Ross's contacts with and directed at a Texas resident, the undersigned finds specific jurisdiction exists over Defendant Ross. The undersigned is also persuaded that under the standard applicable at the pleading stage, the plaintiff has sufficiently plead breach of contract, promissory estoppel, and fraud claims against the defendants. Finally, the undersigned is persuaded that the defendants have failed to prove the

existence of a valid arbitration agreement. These failures result in the undersigned **RECOMMENDED** that the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 14) be **DENIED**.

Finally, the undersigned **RECOMMENDS** that any stay applicable to this case be lifted and the parties **ORDERED** to submit a motion for a scheduling order **on or before September 15, 2026**.

## III. OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1428–29.

**SIGNED** this 18th day of August, 2026.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE